By the Court, Cowen, J.
The first ground taken by the defendants’ counsel is, that the terms of the policy precluded *254 the captain or mate from acting as pilot in the Potomac. The policy, for some reason, allows the captain and male to pilot up Delaware bay and river, Hudson river and Sandy Hook. It contains no express condition or negative against their acting as pilot in any other river; and cannot, I think, be understood as implying, that if either possessed competent skill, he might not do so. The permission was probably intended to be absolute in respect to the places particularly mentioned ; but at others, to require from the assured, that, at his peril, whoever acted as pilot, should possess the requisite qualifications. The case stands, then, upon the general doctrine, that in rivers &c., where it is not customary to take a pilot on board, the captain or mate being duly qualified, or any other competent person may be relied on. In the case before us, the actual pilot was one Cossey, the mate, shipped as such at New-York; a man, as was fully shown, eminently skilful and trustworthy both as a seaman and a pilot up the Potomac, possessing a thorough acquaintance wfith and having been long practiced in the navigation of the river and the general duties of a pilot. The rule laid down in the books that a vessel is not seaworthy unless a licensed pilot be taken on board for the navigation of a river, is put with the qualification that such a practice is customary at the place. (Law v. Hollingworth, 7 T. R. 160 ; 1 Phil, on Ins. 315.) Here the custom -was clearly shown to be otherwise.
Admitting that a licensed pilot might have been had at the mouth of the Potomac, and that the laws of Maryland required one to be taken, the vessel entered the river and was steering for a port on the Virginia side. There is nothing in the case to show that the jurisdiction of Maryland extended over the whole river, so that her laws would control vessels steering for ports in Virginia, or supersede the general custom in Virginia to sail without a licensed pilot. But if otherwise, it is a serious question whether the omission to take such a pilot would, j?er se, vacate the policy. Even if this policy had been effected. in Maryland, such a law would, I take it, be considered *255 as merely directory; and unless it contained a clause expressly declaring the vessel unseaworthy for want of a pilot, it could not be received to overcome the fact that there was a pilot on board of capacity and integrity entirely proportioned to the difficulties of the navigation. The directions by law for licensing pilots on a river and enforcing a sort of monopoly in their favor by penalties, like the 5 Geo. 2, ch. 20, in respect to the Thames, have not, that I am aware, ever been extended to avoid a policy, merely because they may happen to have been disregarded. The question was raised, but not passed upon, in Law v. Hollingworth. The statute of Maryland produced in evidence amounts to no more.
In Warren v. The Manufacturers’ Insurance Company, (13 Pick. 518,) it was held that a non-compliance with the statutes of the United States, requiring that every vessel bound on a voyage across the Atlantic, shall have on board, well secured under deck, a certain quantity of water, under penalty of a certain sum of money to the crew or passengers, in case they shall be put on short allowance, did not ipso facto render the vessel unseaworthy, or the voyage illegal, so as to avoid a policy of insurance. (See also Ocean Insurance Company v. Polleys, 13 Peters’ R. 157 ; and Keir v. Andrade, 6 Taunt. 498.)
It would doubtless have been erroneous had the jury been charged that general ignorance and unskilfulness of the master and crew in their profession and business would not have rendered the vessel unseaworthy, and entitled the defendants to a verdict. (1 Phil, on Ins. 311, 312.) But I do not understand the learned judge so to have charged; nor that he was requested to charge the contrary. The request was indeed to charge that,<£ if the loss arose from the negligence or ignorance of the master and crew, the defendants were exonerated.” I understand this word ignorance as here used, to mean ignorance of the particular navigation of the river operating as the cause of the disaster. The judge then adds, that though his opinion was otherwise of the law, the proximate cause being a peril insured against, yet, as the parties had consented, he should *256 charge, and did so, that if the loss arose from want of ordinary prudence in the navigation of the vessel, then the jury should find for the defendants. This charge followed the request, and covered the whole ground. The jury have found there was no want of ordinary prudence in the navigation of the vessel; and of course the loss could not have happened in consequence of ignorance or negligence. There is indeed no very great compass of skill required in these coasting voyages; but quoad hoc it must be competent as in all others; and a want of it at the outset, especially in the master, would be a fatal violation of the implied warranty of seaworthiness. Any subsequent and temporary state of unseaworthiness cannot operate as a defence, where it appears to have had no connection with the disaster. (1 Phil, on Ins. 332.) Here the jury have, by their finding, negatived any such connection.
The jury have also negatived by their finding on the same part of the charge, that there was any negligence which can furnish a color of defence. They say there was no violation of even ordinary prudence. It is insisted that the finding is against the weight of evidence. The question was very fully investigated, and the verdict passed upon conflicting evidence. There is clearly no such preponderance in favor of the defendants, that we should be warranted in disturbing the verdict.
The question upon the lowest degree of negligence having been thus found against the defendants, it of course disposes of the question of deviation so far as it depended on a departure from the proper track of the vessel through the higher degree, viz. gross negligence. Intentional departure was also put to them and they have found there wras none.
It is moreover quite difficult to perceive how deviation can be predicated of river navigation in almost any case, and especially under such a policy as this. It is a policy on time, covering all and any adventures to and fro in the whole region of the coasting trade from Albany round to Boston, and thence to Chesapeake bay, at the pleasure of the owners. That the' vessel could be said to deviate by pursuing any track within *257 these limits, it would, I apprehend, be difficult to show. A deviation proper is always relative to the geographic line fixed by the policy. But if this had tied up her course from Albany to Georgetown or Alexandria, she being in the Potomac crowding sail for her port of destination, though so unskilfully as to go in the wrong channel—one that was never taken before for such a purpose—yet, so long as she kept the general course, of the river, she had not, I apprehend, deviated within the sense of the law. Jolly’s Ex’rs v. The Ohio Ins. Co. (Wright’s Rep. 540,) seems to suppose the contrary ; but stands better, I think, on the more general ground of a gross blunder in the master. (Lodwicks v. The Ohio Ins. Co., 5 Ohio Rep. 435.) Whether there may not be a deviation, in such case, by delay or other acts, whereby the party can be said to have voluntarily substituted another voyage for that described, it is not material to enquire., because there is no color for saying that any such act took place. 11 The true objection to a deviation is, that the party contracting has voluntarily substituted another voyage, for .that which has been insured,” (Lord Mansfield, in Lavabre v. Wilson, 1 Doug. 291.)(a)
The question as to the cause of the binnacle light being extinguished was also submitted to the jury ; and clearly their verdict should not, in this respect, be disturbed.
New trial denied.

 See The Union Insurance Company v. Tysen, (ante p. 118.)